IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERICK GRAHAM JOHNSON, aka ERICK BROWN JOHNSON,<br><br>Petitioner,<br><br>v.<br><br>GEORGE GALAZA, Warden,<br><br>Respondent.<br>_____ | No. C 05-4612 MMC (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

On November 9, 2005, petitioner Erick Johnson, a California state prisoner proceeding pro se, filed the above-titled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges the constitutional validity of his conviction. In response to the Court's order directing respondent to show cause as to why relief should not be granted, respondent has filed an answer, and petitioner has filed a traverse. Having reviewed the parties' respective submissions as well as the underlying record, the Court concludes petitioner is not entitled to relief based on the claims presented and, accordingly, will deny the petition.

**PROCEDURAL BACKGROUND**

In 2001, a jury in Santa Clara Superior Court found petitioner guilty of one count of robbery, Cal. Pen. Code §§ 211 & 212.5, one count of commercial burglary, id. §§ 459 & 460(b), and one count of receiving stolen property, id. § 496(a). Additionally, the trial court found true allegations that petitioner had three prior serious felony convictions, and that he had served two prior prison terms. The trial court sentenced petitioner to a total term of thirty-seven years to life in state prison.

1  Petitioner appealed. The California Court of Appeal for the Sixth Appellate District affirmed the
2  judgment. (Ans. Ex. 6 (People v. Johnson, No. H022845, 2002 WL 1803854 (Cal. Ct. App. Aug. 7,
3  2002) at 5.) The California Supreme Court denied petitioner's petition for review. (Ans. Ex. 8.)
4  Petitioner filed state habeas petitions, all later denied, in the California Superior Court, Court of
5  Appeal, and Supreme Court. (Pet. at 4–5.)

**FACTUAL BACKGROUND**

Evidence was presented at trial that in May 2000, petitioner stole a cash register containing approximately $150 from a 7-Eleven Food Store in San Jose, California.. (Ans. Ex. 6 at 1.) At trial, the 7-Eleven employee who witnessed the events, Balbir Hotti, testified as follows: An African American man, whose face was fully covered by a black face mask attached to the jacket he was wearing, entered the store and demanded that Hotti open the cash register. When Hotti refused to open the register, the man, who could not open the register himself, took the cash register. Hotti tried to lock or block the door to prevent the man's exit, but the man forced his way past him and pushed the door open with the cash register, causing the door to hit Hotti's arm. Within sixty seconds after the man left, Hotti activated the store alarm and telephoned the police. (Ans. Ex. 2-A at 77-115.) When the police brought petitioner and another man to be viewed by Hotti later that same day, Hotti told them the other man was not the perpetrator and that he was not sure whether petitioner was the perpetrator. (Id. at 114-115.)

Anthony Horne testified to the following: On the night of the event, he was playing cards with friends, who included petitioner. Petitioner asked to borrow Horne's jacket and said he was going to the local 7-Eleven. Horne travelled with petitioner to the store, but did not go inside, and did not otherwise learn about the cash register at that time. Horne and petitioner returned to the card party, where the cash register "all of a sudden . . . show[ed] up," and several people tried to help petitioner open it.[1] Later that day, Horne and petitioner drove to buy drugs, but were stopped by the police. At the time of the stop, approximately forty-five to sixty minutes had elapsed from the time they had left the 7-Eleven. Shortly before the police pulled them over, petitioner had stopped the

---

[1] The group of friends included John Gipson, whose fingerprints, along with defendant's, were later found on the cash register. (Ans. Ex. 2-A at 157–158, Ex. 6 at 2.)

2

truck and removed a white box from the back and placed it in another truck, which events Horne reported to the police at the time they were stopped. (Ans. Ex. 2-A at 140–65, Ex. 2-B at 221-222.)

Officer Brian McDonald of the San Jose Police Department thereafter testified, confirmed Horne's testimony as to what Horne stated he had told the police, and further testified that he then located the other truck and found the white box, which turned out to contain the cash register. (Id. Ex. 2-B at 221-222.)

Petitioner did not testify at trial.

## DISCUSSION

As grounds for federal habeas relief, petitioner alleges (1) the trial court violated his right to due process by denying his motion for discovery of any past complaints against the investigating officers regarding fabrication of evidence; (2) the trial court violated his right to due process by improperly instructing the jury pursuant to CALJIC No. 2.15; (3) the prosecutor knowingly elicited false testimony from a witness, preventing petitioner from receiving the fair trial guaranteed by due process; (4) the prosecutor withheld exculpatory evidence from petitioner, resulting in the violation of petitioner's due process right to a fair trial; (5) the trial court violated petitioner's right to due process by improperly allowing the readback of testimony in the absence of petitioner and his counsel; and (6) trial counsel was ineffective in failing to object to the readback procedure and to certain evidence.

A.  Standard of Review

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Rose v. Hodges, 423 U.S. 19, 21 (1975).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the

3

evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412–13 (2000). A federal court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1). Habeas relief is warranted only if the constitutional error at issue had a "'substantial and injurious effect or influence in determining the jury's verdict.'" Penry v. Johnson, 532 U.S. 782, 796 (2001).

The state court decision implicated by § 2254(d) is the "last reasoned decision" of the state court. See Ylst v. Nunnemaker, 501 U.S. 797, 803–04 (1991); Barker v. Fleming, 423 F.3d 1085, 1091–92 (9th Cir. 2005). When there is no reasoned opinion from the highest state court to have considered the petitioner's claims, the district court looks to the last reasoned state court opinion, which, in this instance, depending on the particular claim under consideration, is either the decision of the California Court of Appeal on direct review of petitioner's trial, or the order denying petitioner's state habeas petition issued by the Superior Court of Santa Clara County. See Nunnemaker, 501 U.S. at 801–06; Shackleford v. Hubbard, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000).

B.  Petitioner's Claims

  1.  Denial of Pitchess Discovery Motion

Petitioner claims the trial court violated his right to due process by denying his motion under Pitchess v. Superior Court, 11 Cal.3d 531 (Cal. 1974), to discover any citizen complaints pertaining to the fabrication of evidence or other dishonest acts by officers involved in petitioner's case. (Pet. Attachment A at 1A.) The state appellate court found the trial court did not abuse its discretion under Pitchess. (Ans. Ex. 6 at 4.) As described by the Court of Appeal, the facts underlying this claim are as follows:

> Before trial, [petitioner] filed a motion for discovery of any citizen complaints pertaining to false arrests or illegal searches or seizures, fabricated evidence, dishonest acts, false testimony or false information in police reports, or neglect of duty by the officers involved in [petitioner's] case. The justification for this request was [petitioner's] claim that the police placed his fingerprints on the cash register. "[T]he officers state they lifted prints from a printer inside the store that the perpetrator touched and from the register and cash box found in the area. The officers specifically state the register had been wiped off with [a] damp cloth. They said they could see the wipe markings. They also mention they found a wet rag in the vehicle [petitioner] was driving. [¶] Despite this evidence, the officers state they found [petitioner's] prints on the register. The defense contends that these prints were placed on the register by some method other than [petitioner] placing his fingers on it.

4

(Ans. Ex. 6 at 2.)

A person in custody pursuant to the judgment of a state court can obtain a federal writ of habeas corpus only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. See 28 U.S.C. § 2254(a). The writ is not available for violations of state law or for alleged error in the interpretation or application of state law. Estelle v. McGuire, 502 U.S. 62, 67–68 (1991).

In light of such authority, the Court concludes petitioner has not presented a cognizable federal habeas claim. While Pitchess provides a right to discovery under state law, it does not create a right under federal law, and petitioner has not cited to any relevant authority indicating the trial court violated his federal constitutional rights when it denied the motion.

Further, even assuming a federal cognizable claim, e.g., a claim under Brady v. Maryland, 373 U.S. 83 (1963), for the suppression of exculpatory evidence, petitioner has not shown that any evidence of police misconduct bearing on credibility even existed, let alone shown with reasonable particularity how the deprivation of any such unspecified Pitchess materials, if they existed, had a substantial or injurious effect on the jury's verdict. Habeas relief is warranted only if the constitutional error at issue had a "'substantial and injurious effect or influence in determining the jury's verdict,'" Penry v. Johnson, 532 U.S. 782, 796 (2001), a showing petitioner has failed to make.

Accordingly, for all of the above reasons, petitioner is not entitled to federal habeas relief on this claim.

2. Instruction on CALJIC No. 2.15

Petitioner claims, without further elaboration, that the trial court's use of CALJIC No. 2.15 as an instruction "was erroneous and misleading, and denied petitioner due process of law." (Pet. Attachment A at 2.) Read in the context of petitioner's direct appeal, this claim is best construed as an assertion that the subject instruction dilutes the prosecution's burden of proof and allows the jury to convict based on a standard requiring less than proof beyond a reasonable doubt. (Ans. Ex. 3 (State Appellate Brief) at 27.) The California Court of Appeal found petitioner had suffered no prejudice, and that CALJIC No. 2.15 "has repeatedly withstood challenges on the grounds that it

5

1  lessens the burden of proof or otherwise denies a defendant due process of law." (Ans. Ex. 6 at 5.)
2  (citations omitted).

3       CALJIC No. 2.15, as read to petitioner's jury, states as follows:

4  If you find that [petitioner] was in conscious possession of recently stolen property, the fact of that possession is not by itself sufficient to permit an inference that
5  [petitioner] is guilty of the crime of robbery and/or burglary.

6  Before guilt may be inferred, there must be corroborating evidence tending to prove [petitioner's] guilt. However, this corroborating evidence need only be slight, and
7  need not, by itself, be sufficient to warrant an inference of guilt.

8  As corroboration, you may consider the attributes of possession, time, place and manner that [petitioner] had an opportunity to commit the crime charged,
9  [petitioner's] conduct and any other evidence which tends to connect [petitioner] with the crime charged.
10

11 (Ans. Ex. 2-B at 375.)

12      Robbery is "the felonious taking of personal property in the possession of another, from his
13 person or immediate presence of another, and against his will, accomplished by means of force or
14 fear," Cal. Pen. Code § 211; burglary is committed when a person "enters any . . . shop . . . with
15 intent to commit grand or petit larceny or any felony," id. § 459. The jury was fully instructed with
16 respect to the elements of both offenses (Ans. Ex. 2-B at 372-73) as well as with respect to the
17 presumption of innocence and burden of proof. (Id. at 365.)

18      To obtain federal collateral relief for errors in the jury charge, a petitioner must show that
19 the ailing instruction by itself so infected the entire trial that the resulting conviction violates due
20 process. See Estelle v. McGuire, 502 U.S. 62, 72 (1991). In other words, the Court must evaluate
21 jury instructions in the context of the overall charge to the jury as a component of the entire trial
22 process. United States v. Frady, 456 U.S. 152, 169 (1982) (citing Henderson v. Kibbe, 431 U.S.
23 145, 154 (1977)).

24      In analyzing whether the instant challenged instruction creates an evidentiary inference that
25 violates due process, the first step is to determine whether the instruction creates a mandatory
26 presumption or a permissive inference. See United States v. Warren, 25 F.3d 890, 897 (9th Cir.
27 1994). "A mandatory presumption tells the jury that it must presume that an element of a crime has
28 been proven if the government proves certain predicate facts." Id. By contrast, "a permissive

6

1 inference instruction allows, but does not require, a jury to infer a specified conclusion if the
2 government proves certain predicate facts." Id. An instruction that merely creates a permissive
3 inference does not shift the burden of proof, but nonetheless violates due process "'if the suggested
4 conclusion is not one that reason and common sense justify in light of the proven facts before the
5 jury.'" Id. (quoting Francis v. Franklin, 471 U.S. 307, 314-15 (1985) (citation omitted). Put another
6 way, there is no violation of due process unless it cannot be said "'with substantial assurance'" that
7 the inferred fact is "'more likely than not to flow from the proved fact on which it is made to
8 depend.'" County Court of Ulster County v. Allen, 442 U.S. 140, 167 & n.28 (1979) (quoting Leary
9 v. United States, 395 U.S. 6, 36 (1969)).

10 In the instant case, the record does not support petitioner's claim that the disputed instruction
11 improperly shifted the prosecution's burden of proof or otherwise violated due process. First,
12 CALJIC No. 2.15 creates a permissive inference, because it does not require the jury to infer any
13 fact; rather, it informs the jury that "possession is not by itself sufficient to permit an inference" and,
14 further, requires corroborative evidence "before" the jury is allowed to draw an inference.
15 Moreover, it can be said with substantial assurance that the inferred fact that petitioner himself stole
16 the property more likely than not flowed from the proved fact of petitioner's possessing the
17 particular stolen property at issue herein under the circumstances pertaining. A cash register is not a
18 readily available item and petitioner was seen with it shortly after the taking and his finger prints
19 were found on it.

20        3.     Elicitation of False Testimony

21 Petitioner claims that the prosecutor knowingly elicited false testimony from its witness
22 Anthony Horne that petitioner was "under the influence of a controlled substance," while knowing
23 petitioner was never charged with being under the influence. (Pet. Attachment A at 2A.) The Court
24 of Appeal did not rule on this claim, and, consequently, the Superior Court offers the last reasoned
25 opinion, finding: "[P]etitioner has not shown false testimony was presented. Petitioner has not
26 shown that he did not ingest crack cocaine and that the prosecution was in possession of evidence
27 indicating that he had not taken any drugs." (Ans. Ex. 9 (Order Denying State Habeas Petition) at
28 2.)   The facts underlying petitioner's claim are as follows. First, as set forth above, Anthony

7

Horne, petitioner's friend, testified he had been playing cards at a party with petitioner before and after the robbery; he was with petitioner at the time petitioner went to the 7-11 and at the time of petitioner's arrest. In response to a question by the prosecutor, Horne testified that petitioner was smoking crack at the party on the night of the robbery. (Ans. Ex. 2-A at 189.) In his closing argument, the prosecutor referred to Horne's testimony, stating, "Now, there was some evidence by Mr. Horne that [petitioner] and he and some of the others were smoking some crack and drinking some beer, so we put in voluntary intoxication instructions, though there's really not a lot of evidence that anyone was particularly intoxicated to the point that would interfere with their ability to form intent." (Ans. Ex. 2-B at 315.)

When a prosecutor obtains a conviction by the use of testimony which he knows or should know is perjured, it has been consistently held that such conviction must be set aside if there is any reasonable likelihood that the testimony could have affected the judgment of the jury. United States v. Agurs, 427 U.S. 97, 103 (1976). To prevail on such a claim, the petitioner must show that (1) the testimony (or other evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) that the false testimony was material. United States v. Zuno-Arce, 339 F.3d 886, 889 (9th Cir. 2003) (citing Napue v. Illinois, 360 U.S. 264, 269–71 (1959)). Evidence is "material" if there is a reasonable likelihood that it could have affected the judgment of the jury. Morris v. Ylst, 447 F.3d 735, 743 (9th Cir. 2006).

Here, having reviewed the relevant record, the Court concludes petitioner's claim is without merit. First, petitioner has not shown the testimony was actually false. The evidence he presents — that he was tested for drugs and was not charged with being intoxicated — indicates only a lack of prosecution, not a lack of evidence; there are a variety of reasons for a prosecutor's decision not to prosecute other than an absence of proof. Significantly, petitioner does not mention the results of the test. For the same reasons, petitioner has not shown the prosecutor knew, or should have known, the testimony was false; again, the decision not to prosecute could have been based on any number of tactical or other considerations. Lastly, because petitioner has failed to meet either of the first two Zuno-Arce requirements, the Court need not determine whether the evidence was material.

Accordingly, petitioner is not entitled to habeas relief on this claim.

8

//

### 4. Withholding of Exculpatory Evidence

Petitioner claims the prosecution withheld exculpatory evidence, specifically, a negative drug test. (Pet. Attachment A at 2A.) According to petitioner, although his trial counsel requested discovery from the prosecution, trial counsel "was never provided with the requested discovery rendering the defense unable to counter testimony given by prosecution witnesses, and assertions put forth in the prosecution['s] closing argument." (Id.) The Court of Appeal did not rule on this claim. The Superior Court found petitioner had not shown "the prosecution was in possession of evidence indicating he had not taken any drugs." (Ans. Ex. 9 at 2.)

Upon a request by a criminal defendant, the government has an obligation to surrender favorable evidence that is "material either to guilt or to punishment." Brady v. Maryland, 373 U.S. 83, 87 (1963). Put differently, to establish a Brady violation, the defendant must show that exculpatory or impeaching evidence was suppressed by the state, either willfully or inadvertently, resulting in prejudice. Morris v. Ylst, 447 F. 3d 735, 741 (9th Cir. 2006). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667, 682 (1985) (plurality opinion); accord id. at 685 (White, J., concurring).

Here, petitioner, as noted, has pointed to no evidence that the test results were, in fact, negative. Rather, petitioner does no more than ask the Court to speculate as to the results. Moreover, petitioner fails to show how the results, even if negative, were material to the defense of the case.

In sum, there is no evidence that the prosecution withheld any exculpatory evidence, let alone material exculpatory evidence, and, accordingly, petitioner is not entitled to habeas relief on this claim.

### 5. Violation of Due Process by Trial Court

Petitioner claims the trial court violated his right to due process when it instructed the jury that the court reporter could read back testimony to the jury at the jury's request. (Pet. Attachment

9

A at 4A.) Petitioner asserts this instruction was "improper" because "the [trial] court never asked for or obtained a waiver from petitioner or trial counsel to be present during any readback of testimony." (Id.) The Court of Appeal did not rule on this claim. The Superior Court found "there is no support for petitioner's contention that he was not permitted to be present when trial testimony was read back to the jury." (Ans. Ex. 9 at 2.)[2]

"The Supreme Court . . . has never addressed whether readback of testimony to a jury is a 'critical stage[ ] of the trial' triggering a criminal defendant's fundamental right to be present." LaCrosse v. Kernan, 244 F.3d 702, 707–08 (9th Cir. 2001). The Ninth Circuit, however, has held that a criminal defendant does have a constitutional right to be present when testimony is read back to the jury. Fisher v. Roe, 263 F.3d 906, 916–917 (9th Cir. 2001) (overruled on other grounds by Payton v. Woodford, 346 F.3d 1204, 1216 (9th Cir. 2003) (reversed by Brown v. Payton, 544 U.S. 133 (2005))). A habeas petitioner who challenges a conviction on the basis of a trial error is entitled to relief only if the error had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993) (citation removed).

Here, petitioner's claim is without merit. First, contrary to petitioner's assertion, the trial court did indeed obtain a waiver from trial counsel. In particular, the prosecutor and defense counsel, with petitioner present, stipulated that any readback of testimony could take place outside their presence. (Ans. Ex. 1-B at 225; Ex. 2-B at 380.) Consistent therewith, the trial court, in the presence of the attorneys and petitioner, informed the jury that it could at any time during deliberations request a readback of "any or all portions of the testimony." (Id. Ex. 2-B at 382.) During deliberations, the jury requested and received a readback of certain testimony. (Id. Ex. 1-B at 225.)  Second, although petitioner did not expressly waive his personal presence, he was in attendance when his counsel so stipulated and he offered no objection to that procedure. Further, even if it was error for the trial court to fail to obtain petitioner's personal waiver, petitioner fails to identify anything that occurred during the readback that would indicate the alleged error had a substantial and injurious effect or influence in determining the jury's verdict.

---

[2] In his state habeas petition, petitioner set forth the claim differently than he does herein. In his state petition he claimed the trial court did not allow him to be present during readback. (Ans. Ex. 9 at 1.)

10

Accordingly, petitioner is not entitled to habeas relief on this claim.

### 6. Ineffective Assistance of Counsel

Petitioner advances two claims that his trial counsel rendered ineffective assistance in violation of petitioner's Sixth Amendment rights. (Pet. Attachment A at 3A–4A.)

In order to prevail on a claim of ineffectiveness of counsel, petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. Strickland v. Washington, 466 U.S. 668, 687–88 (1984). Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. Where the defendant is challenging his conviction, the appropriate question is "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695. It is unnecessary for a federal court to address the prejudice prong of the Strickland test if the petitioner cannot establish incompetence under the first prong. See Siripongs v. Calderon, 133 F.3d 732, 737 (9th Cir. 1998).

#### a. Failure to Object to Allegedly False Testimony

Petitioner claims his trial counsel failed to object to Horne's allegedly false testimony. (Pet. Attachment A at 3A.) The Court of Appeal did not rule on this claim. The Superior Court found petitioner "has not shown false testimony was presented." (Ans. Ex. 9 at 2.)

As discussed above, petitioner has not shown Horne's testimony was false. Consequently, trial counsel's failure to object to Horne's testimony on the ground it was false cannot have constituted deficient performance.

Accordingly, petitioner is not entitled to habeas relief on this claim.

#### b. Absence at Readback of Testimony

Petitioner claims his trial counsel rendered ineffective assistance when he failed to be present at the readback of testimony to the jury, and therefore prevented petitioner from being present as

11

well.[3] (Pet. Attachment A at 3A–4A.) The Court of Appeal did not rule on this claim. The Superior Court found "no support for petitioner's contentions." (Ans. Ex. 9.)[4]

The record does not support petitioner's claim. First, petitioner fails to explain why either his trial counsel's or his own absence at the readback constituted ineffective assistance, and, as noted above, there is nothing in the record to suggest petitioner offered any objection to his counsel's decision.

Furthermore, the record does not support petitioner's conclusory assertion that he was prejudiced either by his or his counsel's absence during readback. Petitioner has pointed to nothing in the record indicating that either the procedures followed or the content of the portions read back resulted in an unconstitutional verdict. Indeed, the record here reflects nothing like the type of circumstances under which the Ninth Circuit has found a petitioner's due process rights were violated by the reading back of testimony in defense counsel's absence. See Fisher v. Roe, 263 F.3d at 916 (finding constitutional violation where "readback occurred not only in the absence of the defendants and their lawyers, but without their knowledge and participation," resulting in their being "completely and unilaterally excluded from that part of the trial"; distinguishing situation where defense counsel "was consulted by the court and agreed to the proposed procedure and stipulated that his client need not be present"); Lugo v. Terhune, 277 Fed.Appx. 714, 716 (9th Cir. 2008) (finding no constitutional violation where trial court obtained stipulation to readback procedure in advance of reading back testimony in defense counsel's absence; distinguishing Fisher as case where trial court "conducted a secret readback"). Here, trial counsel and petitioner were informed that readbacks might be needed, and trial counsel, in petitioner's presence and without objection by petitioner, waived their appearance at the readbacks.

Accordingly, petitioner is not entitled to habeas relief on this claim.

---

[3] Petitioner also claims trial counsel rendered ineffective assistance when he failed to be present when the verdict was read. (Pet. Attachment A at 4A.) Petitioner was represented by another attorney at that time, however. (Id.) Petitioner provides no reason as to why trial counsel's absence under such circumstances constituted deficient performance, nor does he criticize the other attorney's performance, and, tellingly, fails to show how he was in any way prejudiced. Accordingly, petitioner is not entitled to habeas relief on this claim.

[4] In his state habeas petition, petitioner set forth the claim differently, in that he claimed he was not allowed to be present during readback. (Ans. Ex. 9 at 1.)

12

**CONCLUSION**

For the foregoing reasons, the Court concludes that neither the California Court of Appeal nor the Santa Clara County Superior Court rendered a decision that was contrary to, or constituted an unreasonable application of, clearly established federal law, or entailed an unreasonable determination of the facts.

Accordingly, the petition for a writ of habeas corpus is hereby DENIED.

The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

DATED: March 31, 2009

MAXINE M. CHESNEY
United States District Judge